NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANITA HAYER<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY<br><br>Defendant. | Civil Action No.: 07-251 (PGS)<br><br>OPINION |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant University of Medicine and Dentistry of New Jersey's ("UMDNJ") motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) to dismiss the claims of Plaintiff Danita Hayer ("Hayer") in their entirety. Hayer alleges discrimination based upon race and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, ("Title VII"), and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-4.1, *et seq.*

**I.**

Hayer is an African-American. (Compl. Count I ¶ 2.) On or about October 14, 2001, Hayer commenced her employment with UMDNJ as a Research Assistant in the Outreach Education Department. (Gresham Aff. Ex. B at 34:11-16.) Effective October 14, 2002, Plaintiff began working as a Laboratory Technician in the Cancer Institute of New Jersey of UMDNJ ("CINJ"). (Gresham Aff. Ex. B at 37:7-13, 43:10-13.) One year later, Plaintiff was promoted to the position of Research

1

Teaching Specialist V in the Tissue Analytic Service Research Laboratory ("TAS"). (Gresham Aff. Ex. F.)

In March of 2005, the TAS began to expand its responsibilities. (Gresham Aff. Ex. D ¶ 6.) Hayer was rotated back and forth from the TAS to the "pharmacokinetic" laboratory.[1] (*Id.*) During the relevant time period hereto, Hayer worked under the supervision of Julia Friedman ("Friedman"), a Caucasian, and under Novelette Simmons ("Simmons"), an African-American, in the PK laboratory.

Hayer's allegations of discriminatory treatment are summarized below:

(1) Friedman issued Plaintiff written and oral reprimands for absences even though she had complied with the call out and documentation requirements, while Caucasian co-workers went unpunished for absenteeism. (Compl. Count I ¶ 2.)

(2) Hayer was reprimanded for wearing blue jeans by way of a staff disciplinary notice she received. (Klausner Cert. Ex. P; Gresham Aff. Ex. N.) Lilia Muolo ("Muolo"), a Caucasian female co-worker, and Rosa Gonzales ("Gonzales"), an Asian-American co-worker of Filipino descent, were permitted to wear jeans when performing endoscopy procedures. (Hayer Br. at 5.)

(3) Plaintiff was not provided adequate training while others received more training. (Compl. Count I ¶ 2.)

(4) Hayer was given an upgrade and salary increase only after complaining that the denial thereof was discriminatory. (*Id.*) Caucasian co-workers received their upgrades and salary increases without any problems. (*Id.*)

(5) Plaintiff received low performance ratings that did not accurately reflect her performance. (*Id.*)

(6) Hayer's numerous attempts to transfer to a new department were denied, forcing her to remain in a harassing environment. (*Id.*)

(7) Friedman treated another African-American woman differently than Caucasian employees based upon her race. (Hayer Facts ¶ 12.)

---

[1] "Pharmacokinetic" ("PK") is a commonly used industry term that refers to the collecting and processing of liquid biospecimens to be used for clinical trials.

(8) Caucasians were not required to produce doctor's notes as part of the call-out procedure as she was required to do. (*Id.*)

(9) UMDNJ retaliated against Plaintiff after Hayer filed a grievance with her union representative. (Hayer Br. at 12.)

Hayer filed an unwritten grievance with her union representative on September 19, 2005. (Hayer Facts ¶ 1; Gresham Aff. Ex. B-1 at 155:11-13.) On November 29, 2005, Hayer met with Laxmi Vazirani, Manager of the Office of Affirmative Action/Equal Employment Opportunity ("AA/EEO"), alleging Friedman treated her and another African-American co-worker differently than non-African-American employees. (Gresham Aff. Ex. HH.) Hayer subsequently canceled a meeting with management when she learned it was a mediation session and not an investigatory meeting, and did not respond to requests to fill out a complaint form. (Gresham Aff. Exs. HH, B-1 at 165:11-15, 168:16-24.) On July 3, 2006, the AA/EEO advised Hayer that it concluded its investigation and was unable to find evidence of differential treatment. (Gresham Aff. Exs. II, B-1 at 169:19-170:1.)

On March 6, 2006, Plaintiff filed a complaint with the EEOC. (Gresham Aff. Exs. KK, LL.) Several weeks thereafter, Hayer filed a charge of discrimination with the N.J. Division on Civil Rights. (Gresham Aff. Exs. JJ, B-1 at 204:25-206:25.) On October 13, 2006, the EEOC advised Hayer that it did not find that UMDNJ discriminated against her on the basis of race or as an act of retaliation, and she received a notice of her right to sue. In April 2007, UMDNJ terminated Hayer for unrelated reasons and not a subject of this lawsuit.

## II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant,

and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor -- that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

### III.

#### A.     Title VII Discrimination

Title VII in pertinent part provides:

> It shall be an unlawful employment practice for an employer-
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). Discrimination claims brought under Title VII must be analyzed according to the burden-shifting framework which was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).[2] This framework consists of three steps. First, a plaintiff must present sufficient evidence to support a prima facie case of discrimination. *Hicks*, 509 U.S. at 506. Generally, to establish a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered from an adverse employment decision; and (4) the employer sought to or did fill the position with a similarly qualified person who was not a member of the protected class. *McDonnell Douglas*, 411 U.S. at 802.[3]

---

[2] Plaintiff's LAD claim is analyzed under the same federal standards that apply to Title VII, as the Third Circuit and New Jersey courts have recognized that they are "parallel" statutes with general uniformity. *Hailey v. City of Camden*, 650 F. Supp. 2d 349, 355 (D.N.J. 2009) (citing cases that apply same standards to Title VII and NJ LAD claims). *Accord Waldron v. SL Industries, Inc.*, 56 F.3d 491, 504 (3d Cir. 1995) ("[T]he New Jersey Supreme Court has not only adopted the *McDonnell Douglas* framework for evaluating discrimination cases based upon indirect evidence, but has consistently looked to federal courts for guidance about the application of the shifting-burdens analysis.") (internal citations omitted).

[3] When applying *McDonnell Douglas*, the precise elements of the prima facie case vary based on the context of the case and were not intended as rigid or unbending. *Lynch v. Robertson*, 2007 U.S. Dist. Lexis 608335, at *28 (W.D.Pa. Aug. 20, 2007) (citations omitted).

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions. *See Hicks*, 509 U.S. at 507; *Burdine*, 450 U.S. at 254; *McDonnell Douglas*, 411 U.S. at 802.

If the defendant satisfies this burden, the reviewing court must proceed to the third step. At this stage, the burden of production shifts back to the plaintiff, who must come forward with admissible evidence showing that the defendant's articulated, nondiscriminatory reasons were not the true reasons for the adverse action, but merely a "pretext for discrimination." *See Hicks*, 509 U.S. 507-08; *Burdine*, 450 U.S. at 253. A plaintiff will satisfy the burden by providing evidence that would cause a fact finder to disbelieve the reasoning articulated by the defendants or believe that invidious discriminatory reasons were more likely than not a motivating cause of the defendant's actions. *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994). Although the evidentiary burdens shift between the plaintiff and the defendant, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

Hayer alleges Friedman disciplined her more harshly than Caucasian co-workers. In weighing the evidence in favor of the Plaintiff, the Court finds that Hayer establishes a prima facie case for discriminatory discipline.

At deposition, Hayer stated that she received Staff Counseling Notices for poor attendance, while non-African American co-workers were not disciplined for similar conduct. (Gresham Aff. Ex. B at 93:4-25.) Plaintiff identified Shawn Carr ("Carr"), a Caucasian male, as one of the non-minority co-workers treated less strictly under the attendance policy. (Gresham Aff. Ex. B at 94:1-5.) A careful review of the record reveals that Carr received two counseling notices and one written warning for lateness. (Gresham Aff. Exs. Q, R, S.) Plaintiff asserts that Carr received favorable treatment because he received a counseling notice for attendance after twelve absences between January and September 2005, notwithstanding UMDNJ attendance policy, which provides for the

issuance of a counseling notice after five unscheduled absences in a twelve month period. (Hayer Resp. to UMDNJ Facts ¶ 43; Gresham Aff. Ex. AA.) Hayer, on the other hand, received a counseling notice after only six unscheduled absences between January and March 2005. (Greshman Aff. Ex. I.)

Plaintiff also identified co-worker Gonzales, an Asian-American of Filipino ancestry, as having been treated more leniently by Friedman under UMDNJ's attendance policies. (Gresham Aff. Ex. B at 102:21-103:2.) Specifically, Hayer alleges Gonzales had more absences than her, but Gonzales was permitted to set up her own work schedule, and not required to sign in and out. (Gresham Aff. Ex. B at 105:18-106:6.)

Hayer also contends she was the only employee disciplined for wearing blue jeans. Plaintiff claims she received an e-mail from Friedman relative to her wearing blue jeans at work, and that Plaintiff was counseled for wearing jeans as part of a staff disciplinary notice.[4] (Hayer Br. at 5.) Other non-minority employees were not disciplined.

In the second step of the burden-shifting framework, the Defendant must articulate legitimate, nondiscriminatory reasons for its actions. UMDNJ provided the following evidence to prove that all employees were treated equally. First, that Muolo, a Caucasian female, was also issued Staff Counseling Notices by Friedman for lateness, continued attendance problems, unprofessionalism,

---

[4] The remainder of Hayer's allegations, specifying inadequate training, inability to transfer to a new department, and difficulty in receiving upgrades and salary increases fail for the following reasons. Hayer does not offer evidence beyond unsubstantiated allegations in support of the assertion that she was denied adequate training. Even assuming, arguendo, that Hayer received inadequate training, there is no evidence in the record indicating that similarly situated Caucasian co-workers were provided adequate training. In fact, Hayer admitted to having been trained by Simmons. (Gresham Aff. Ex. B-1 at 137:21-138:8.) Similarly, Hayer has failed to submit evidence that non-African-American employees had less difficulty attaining upgrades and salary increases and greater flexibility in transferring to new departments. To the contrary, Plaintiff received a promotion even after having received several counseling notices. (Gresham. Aff. Ex. F.). Lastly, Hayer has failed to offer any evidence demonstrating that similarly situated non-minority co-workers were treated more favorably under the Collective Bargaining Agreement. Therefore, these claims are dismissed.

and poor judgment. (Gresham Aff. Exs. U-W.) Second, that Friedman required Gonzales to work specific hours and warned her on at least two occasions that she must remain in the office until the end of her shift. (Gresham Aff. Ex. T.) Additionally, Defendant asserts that Gonzales had at least one more year seniority than Hayer, and thus was entitled to different treatment than Hayer. (Gresham Aff. Ex. B at 106:15-107:24.) Third, that Friedman issued Jose Rivera ("Rivera"), a Hispanic male, and Carr counseling notices for unexcused absences and failure to provide doctors' notes. (Hayer Resp. to UMDNJ Facts ¶¶ 53-54; Hayer Facts ¶ 24.) Fourth, as to the dress code policy, UMDNJ argues that Plaintiff was not similarly situated to her colleagues. Defendant contends that unlike Gonzales and Muolo, Hayer was the only employee who worked in the PK unit, which required her to enter the CINJ clinic on a daily basis. (Gresham Supp. Aff. Ex. TT at 10.) Pursuant to CINJ's policy, jeans are not appropriate attire for employees who are visible to patients or working in patient areas. (Gresham Aff. Ex. Z.)

Regardless of the above, Plaintiff has presented evidence which creates issues of material fact as to whether Defendant's nondiscriminatory reasons for its actions were a pretext for unlawful discrimination. Lilia Muolo and Debbie Sweeney, co-workers of Plaintiff, and Judith Cunha, Hayer's union representative, each submitted affidavits on behalf of Hayer. (Klausner Cert. Exs. A-C.) Their affidavits corroborate the claim that Hayer was treated less favorably than non-African-American employees.

Muolo asserts that she and Gonzales were permitted to wear jeans, while Hayer was not allowed. (Klausner Cert. Ex. A.) She further contends that Gonzales was given preferable treatment under the attendance policy. (*Id.*) Cunha claims that non-African-American employees were treated more leniently with respect to attendance and recordkeeping. (Klausner Cert. Ex. B.) Sweeney, an African-American, also alleges that African-American employees were subjected to discriminatory treatment. (Klausner Cert. Ex. C.) Specifically, Sweeney alleges that Carr and Muolo were disciplined less harshly for lateness; and, that on one occasion, Friedman disciplined Sweeney and

Hayer for missing a day from work, while the rest of the lab workers received excused absences for that day due to inclement weather. (*Id.*) These are material facts in dispute that must be resolved by a trier of fact.

Hayer has demonstrated that material disputed facts exist as to whether she was treated less favorably than similarly situated non-African American co-workers. Thus, her Title VII discrimination claim is sufficient to survive summary judgment.

### B. Retaliation

The burden-shifting requirements of *McDonnell Douglas* similarly apply to retaliation claims. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).[5]

In this case, the third prong of the prima facie case requires that a plaintiff establish a causal connection between the protected activity (filing a grievance with the union representative and complaints with the EEOC and N.J. Division on Civil Rights) and the adverse employment actions *(inter alia*, poor performance ratings) by "circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext." *Kachmar v. SunGard Dada Systems*, 109 F.3d 173, 177 (3d Cir. 1997); *accord Barnes v. Office Depot, Inc.*, 2009 WL 4133563, at *11 (D.N.J. Nov. 24, 2009). In *Barnes*, the court held that "proof of a causal connection between a protected activity and an adverse employment action involves a highly specific inquiry into the motives of an employer." 2009 WL 4133563, at *11 (citing *Kachmar*, F.3d at 177). Further, "[t]emporal proximity can serve as circumstantial evidence 'sufficient to raise the inference that [the plaintiff's] protected activity was the likely reason for the adverse action.'" *Id. See also Neely v. U.S. Postal Service*, 307 F. App'x.

---

[5] To establish a prima facie case of retaliation, the plaintiff must show that "(1) he was engaged in protected activity; (2) he was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the discharge." *Woodson*, 109 F.3d at 920 (citing *Quiroga v. Hasbro*, Inc., 934 F.2d 497, 501 (3d Cir. 1991); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)).

681, 684-685 (3d Cir. 2009); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990).

"[T]emporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)) (internal quotation marks omitted). The Third Circuit's decision in *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989), demonstrates a case where the "temporal proximity" factor was significant. In *Jalil,* the plaintiff was terminated two days after the defendant learned of the EEOC complaint.

Here, Hayer filed a grievance with her union representative on September 19, 2005. (Hayer Facts ¶ 1.) On November 1, 2005, Friedman allegedly issued Hayer a low performance rating. (Gresham Supp. Aff. Ex. PP.) In March of 2006, Hayer filed a complaint with the EEOC and the N.J. Division on Civil Rights. (UMDNJ Facts ¶¶ 74-75.) On July 17, 2006, Hayer allegedly received a second low performance rating. (UMDNJ Facts ¶ 63.) Plaintiff claims that after she filed her grievance and discrimination charge, Defendant retaliated by continuing to give improper discipline, and by denying promotion, merit pay, and tuition reimbursement as a result of invalid poor performance evaluations. (Hayer Br. at 12-13; Compl. Count II ¶ 3, Count IV ¶ 3.)

In cases like this one, "where 'the temporal proximity is not so close as to be unduly suggestive,' [the Third Circuit has] recognized that 'timing plus other evidence may be an appropriate test.'" *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003) (internal quotation omitted)).

Hayer fails to proffer evidence of intervening antagonism, retaliatory animus, or any other evidence in the record sufficient to support an inference of retaliation. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269-271; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed. 202 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.")

The record reflects that Hayer was treated no differently after having filed a grievance and discrimination charge. Prior to filing a grievance with her union on September 19, 2005, Hayer received four counseling notices and one disciplinary notice. (Gresham Aff. Exs. I-L.) After having filed her grievance, Hayer received a counseling notice and a written reprimand. (Gresham Aff. Exs. M, N, PP.) Hayer was not issued any counseling or disciplinary notices after filing complaints with the EEOC and the N.J. Division on Civil Rights in March of 2006.

Lastly, Hayer claims she was issued poor performance ratings in November 2005 and July 2006. (Hayer Br. 12-14.) In each performance evaluation, Plaintiff was rated a 2 on a scale of 1 to 3. (Gresham Aff. Exs. OO, PP.) Pursuant to UMDNJ performance rating guidelines, a rating of 2 "is used for staff members who perform their jobs well and are fully competent. It indicates that performance meets and may exceed expectations." (*Id.*) Plaintiff's performance rating is a far cry from a retaliatory employment decision.[6]

Hayer has failed to offer evidence of an adverse employment decision in retaliation to her filing a grievance and discrimination charge. Hayer's claim for retaliation is dismissed.

### C. Punitive Damages

To recover punitive damages under Title VII or LAD, a plaintiff must show more than the minimum conduct necessary to prove the underlying claim. *See Weiss v. Parker Hannifan Corp.*, 747 F. Supp. 1118, 1135-36 (D.N.J. 1990); *Di Giovanni v. Pessel*, 55 N.J. 188 (1970); *Catalane v.*

---

[6] Plaintiff also alleges denial of training and opportunity to schedule a meeting with Human Resources. Hayer proffered no evidence in support of her claim of inadequate training beyond mere allegations. Hayer supports her contention of the denial of an opportunity to schedule a meeting with Human Resources with a copy of an internal e-mail from union representative Judith Cunha on November 2, 2005 detailing unsuccessful attempts to meet with management. (Klausner Cert. Ex. E.) Assuming Cunha's allegation is true, there is no evidence that management was more receptive to meeting with non-minority complainants. Finally, there is no evidence Plaintiff was denied merit pay or tuition reimbursement.

*Gillian Instrument Corp.*, 638 A.2d 1341, 1354 (N.J. App. Div. 1994). In particular, plaintiff must establish that (1) upper management was an actual participant in the alleged wrongdoing or was willfully indifferent to the alleged wrongdoing, and (2) that the alleged misconduct was especially egregious. *See Rendine v. Pantzer*, 141 N.J. 292, 313-14 (1995). To constitute especially egregious conduct, the alleged misconduct must have been "wantonly reckless or malicious" and there must be "an intentional wrongdoing in the sense of an evil-minded act or an act accompanied by a wanton and willful disregard of the rights of another." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 48-49 (1984).

Moreover, where an employer makes a good faith effort to comply with anti-discrimination laws, such efforts serve to insulate the employer from vicarious liability for punitive damages. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544-45 (1999); *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 110 (3d Cir.1994); *Cavuoti v. NJ Transit Corp.*, 161 N.J. 107, 119 (1999).

Defendant maintains that Plaintiff's claims under Title VII and the LAD for punitive damages are unwarranted, as Hayer does not meet the heightened threshold set forth by both the Third Circuit and the New Jersey Supreme Court. (UMDNJ Br. at 25.) While there is likely merit to Defendant's assertion, there are material facts in dispute here, and thus it is not an analysis that is appropriate on summary judgment at this time. "[T]he allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact." *Fisher v. Volz*, 496 F.2d 333, 347 (3d Cir. 1974). "The issue of punitive damages is a fact question which should be decided by a jury." *Domm v. Jersey Printing Co.*, 871 F.Supp. 732, 739 (D.N.J. 1994); *see also Weiss*, 747 F.Supp. at 1135. However, "[i]f during trial, plaintiff fails to put forth any evidence establishing a foundation for punitive damages, then counsel shall move for judgment as a matter of law pursuant

to Fed.R.Civ.P. 50(a)." *Domm*, 871 F. Supp. at 739. Therefore, summary judgment is denied at this time as to punitive damages. At trial, the Defendant may revisit the issue.

### IV.

In light of the foregoing, Defendant's motion for summary judgment is denied in part and granted in part. Counts II and IV of Plaintiff's complaint alleging retaliation are dismissed. Summary judgment is denied with regard to Plaintiff's claim for discrimination in Counts I and III of the complaint.

June 2, 2010

/s/ Peter G. Sheridan

PETER G. SHERIDAN, U.S.D.J.